JOHN V. LEWIS, Respondent, *v.* WALLACE C. ANDREWS, Appellant.

*Court of Appeals, June 9, 1891.*

1. *Evidence. Weight.*—The comparative weight of the written correspondence between the parties shortly after the contract was made, and the evidence as to verbal admissions at a later date, as indicating what the contract is, is solely for the jury.

2. *Tender.*—In an action to recover the money which the plaintiff claimed the defendant had agreed to repay upon demand and for which a certificate had been given, it is sufficient to tender such certificate on the trial, in case it is worthless.

Appeal from judgment entered upon order of the general term of the supreme court, in the first judicial department affirming judgment entered on a verdict in favor of the plaintiff.

*Everett P. Wheeler*, for appellant.

*Almon Goodwin*, for respondent.

BRADLEY, J.—The plaintiff delivered his check drawn upon the Metropolitan Bank of Cincinnati to the defendant, bearing date September 3, 1885, for $10,000, payable to the order of the latter. The check was afterwards deposited for collection, collected, and its proceeds placed to the credit of the defendant in a bank in the city of New York. The controversy between the parties has relation to the agreement or understanding pursuant to which this check was given to and received by the defendant. The latter was then president of the New York Cable Railway Company, in behalf of which efforts were then being made by its promoters to obtain franchises to enable it to construct cable railways in certain streets of the city of New York; and unless such rights were procured the purpose of the company would substantially fail and be defeated. The evidence on the part of the plaintiff tended to prove that at an

31

interview between him and the defendant, the latter expressed much confidence in the enterprise and advised the plaintiff to advance some money with a view to taking bonds of the company ; and that it was finally agreed between them that the plaintiff would give his check for $10,000 to the defendant, for which he should receive $20,000 first and $20,000 second mortgage bonds of the company when it obtained such franchises ; that until then the check should not be used ; and that if at any time the plaintiff felt dissatisfied or for any reason disinclined to continue in the position thus taken, the defendant would, on demand, return to him the money without interest ; and that the check was afterwards made and delivered pursuant to such arrangement.

The effort to obtain such franchises failed. The plaintiff demanded of the defendant the repayment of the money, which was by him refused ; and the purpose of this action was to recover it. The evidence of the defendant is in conflict with that on the part of the plaintiff, so far as relates to the assumption by the former of any personal responsibility for the repayment of the money, and tends to prove that he was acting, as he says the plaintiff was then advised, in a representative capacity ; and that although he informed the plaintiff that the money not used in the promotion of the enterprise should be returned if it failed, he also stated to him that the money would be turned over to one Shaw, the attorney of the company, with whom such was the understanding, and that the money was so finally disposed of by the defendant. On the other hand, the plaintiff, by his evidence, says that the name of Mr. Shaw was not mentioned, nor did the defendant assume to act in the transaction with him other than on his individual responsibility. The question of fact arising upon the conflicting evidence, in behalf of the respective parties, was submitted to the jury. Thus far no question arises for consideration on this review.

It appears that after the delivery of the check to the

defendant there was some correspondence between the parties. The first was a telegram, of date October 14, 1885, from the defendant to the plaintiff, stating that the check was deposited that day. This was followed by letter of same date from the plaintiff at Cincinnati acknowledging the receipt of the telegram and saying the check would be paid when presented, and adding : " Will you please send the bonds such payment will entitle me to receive, under the agreement, to me here, made in my favor in sums of $5,000 each, par value." And not having received any answer to it, he enclosed copy of that letter in one also from Cincinnati of date November 3, 1885, for fear, as there expressed, that it may not have been received, and in it said : " Will thank you to wire upon receipt of this at my expense, whether the bonds I have paid for have been sent me, and in case they have not when I may expect to receive them. Would also like to have by mail any information you can impart as to work being done, as have heard nothing since I saw you."

On November 5, 1885, at New York, the defendant wrote the plaintiff acknowledging receipt of letter saying : " The bonds were not ready for delivery through the trust company as there was some unavoidable delay. Both classes of bonds have now been completed and the accepted orders of the Am. Loan & Trust Co. have been issued to-day which has been the earliest issue possible to all the subscribers." He then referred to the fact that he enclosed the plaintiff's accepted order for bonds, which bonds he could receive at any time from the trust company, but that all the subscribers there so far as he knew left the bonds on deposit with the trust company." The purport of the receipt and contract of that company was that it had received from the plaintiff $10,000 on account of Charles P. Shaw, attorney, for which sum the trust company out of certain bonds delivered to it agreed to deliver to the plaintiff $20,000 first mortgage bonds and a like amount of second mortgage bonds of the.

New York Cable Railway Co. And on the 9th of November, 1885, the plaintiff wrote the defendant acknowledging the receipt of his letter with enclosure and said : " I note the bonds are now ready for delivery, but that the majority of the owners have left them on deposit with the American Loan & Trust Co. Mr. Burnett of Chicago and myself are, as Burnett expresses it, ready ' to go with the crowd,' in this matter if we can see any advantage in doing so." The plaintiff also gave evidence of conversations with the defendant at interviews subsequent to those letters and especially in January and April, 1886, to the effect that the defendant then recognized the agreement on his part to repay the money to the plaintiff and repeated his promise that it should be so repaid on the terms before mentioned in the evidence of the plaintiff. Having in view those written communications the defendant's counsel requested the court to charge the jury that " the letters and written correspondence between the parties shortly after the contract was made, are of more weight in deciding what the contract was than evidence as to verbal admissions at a latter date."

And the justice remarked : " I will not charge that they are of more weight, but I will charge that these letters, as I said before, are to be taken into consideration, and in connection with the oral testimony and their indications as to what the understanding of the contract was by the writers of the letters ; " and exception was taken to the refusal to charge as requested. These letters were not by this proposition treated as constituting the contract, but it was assumed that it had been made verbally between the parties before they were written. Whether or not the letters were entitled to more weight than evidence of admissions, was of no importance unless they were inconsistent with it, and it is only in the view that they were so, that the request may be deemed to have been made. The fact that the defendant's letter of November 5th may not be deemed in harmony with the evidence of his admissions, did not necessarily, as against the plaintiff,

require the conclusion that it was entitled to more weight than was such evidence, unless it could also be said, as matter of law, that the plaintiff was, at the time of receipt of that letter, advised of the situation as it then existed in respect to the railway company in its relation to the franchises before referred to. In view of the evidence on his part of the arrangement under which the money was advanced, the inference was permitted that he understood, when he wrote and received those letters, that the franchises had been obtained. This, in that view, may have been assumed by him when the defendant's telegram of October 14, 1885, was received; and the jury were also at liberty to infer that no personal interview was had between the parties after the check was advanced until in January, 1886, when the plaintiff testified that he " expressed surprise that the money had been used without having first obtained the concessions of the charters and franchises as he (defendant) had promised;" and that the defendant then said " that, although the franchises and charters had not been as yet obtained, it would be only a question of a short time; that they would be granted, and he said just leave this money as it is, this matter is coming out all right. * * * I said to Mr Andrews I will let this money remain with you a little longer, provided Mr. Burnett is of the same mind." Then in his letter of 27th of February, 1886, the plaintiff after referring to his January conversation with the defendant, stated that unless the bonds shall be issued at an early date, he might prefer to take down the deposit of the $10,000. This was followed by a letter in answer from the defendant, to the effect that things were looking favorably.

The plaintiff testified to another interview in April in which the defendant gave like assurances. And in June the plaintiff, by letter, informed the defendant of his purpose to "take down the money deposited," etc., and thereafter he sought to obtain it from the defendant. It may be observed that the evidence warranted the conclusion that the plaintiff

understood the arrangement to be such that he was to take the bonds of the company only in the event the city franchises were obtained, as upon that depended their value, and without them there was nothing on which to place a mortgage to secure the bonds ; and that in his letters after the telegram, and prior to January, 1886, he assumed, and was permitted to do so, that the franchises had been acquired, inasmuch as his evidence tended to prove that the check was not to be used until and except in that event.

In view of these circumstances, and some others which might be mentioned, the force which may have been given to the evidence furnished by the letters in its bearing upon the oral evidence of the contract and of admissions relating to it, was dependent upon the relation and application it was found to have to that subject, and consequently its comparative "weight, indicating what the contract was," became a question solely for the jury. The court properly refused to charge the unqualified proposition as requested.

The court was also requested to charge that " if the jury find that the certificate issued to the plaintiff was not tendered to the defendant before suit was brought, their verdict should be for the defendant."

The court remarked that it had already charged upon that subject and it was unnecessary to charge further upon it. The exception to this refusal to charge as requested was not well taken. The court, in calling the attention of the jury to the evidence of tender, charged them that if the certificate had no value it was sufficient to surrender or tender it at the trial, as had been done. In this there was no error. It may be observed that the action was not founded upon rescission of the contract, but upon it to recover the money which the plaintiff claimed the defendant had agreed to repay upon demand. The offer to surrender it at the trial was sufficient. And it is uncontroverted that the attorney for the plaintiff offered by letter to the defendant before the action was commenced, to return the certificate to him.

The court left the question to the jury to find whether or not there was a tender of the certificate before suit; and that if they found it was valueless no tender before then was necessary. The evidence of MacAuley, to which exception was taken, was substantially the same as that previously given by the defendant on his cross-examination. The slight difference, such as it was, added nothing inconsistent with that so given by him which could excite attention to his prejudice. Then the defendant on his direct examination had opened the subject which properly furnished the ground for the cross-examination by which the facts were elicited, to which MacAuley testified in relation to his transaction with the defendant.

After a careful examination of the evidence and all the exceptions taken, our attention is called to no other question requiring the expression of consideration.

The judgment should be affirmed.

All concur, except BROWN, J., not sitting.

---

NOTE.

On question of tender back of chose in action as condition precedent to maintenance of action, see further Holmes & G. M. Co. *v.* Morse, 53 Hun, 58; Ocean Nat. Bk. *v.* Fant, 50 N. Y. 476.